## FITZHUGH v. CUSTER.

The practice of considering the return to a rule to show cause why a *mandamus* should not issue conclusive, and of thereby remitting the plaintiff to an action on the case, or to an information for a false return, before granting the peremptory writ, is repugnant to our system.

A controlling principle which pervades our entire system of civil jurisprudence is that which forbids a multiplicity of suits and requires the rights of the parties incident to the subject-matter of the suit, whether they be of a legal or equitable character, to be determined in a single controversy

The introduction of a writ by name does not necessarily bring with it all the rules of practice regulating the writ. The rules of pleading in cases of *mandamus* are judicious, and should be enforced when not inconsistent with statutory regulations.

The case of Bradley *v.* McCrabb, (Dallam, 508,) which decided that a rule to show cause against a *mandamus* might be made returnable to the same term at which it was granted, cited and approved.

The doctrine that a judgment stands until reversed for error or set aside for fraud does not apply where want of jurisdiction is made the question. This may always be set up where a judgment is sought to be enforced or any benefit is claimed under it.

Where the record of a County Court showed, in a matter of a contested election, that a quorum was not present, but that the contestants submitted the case to arbitrators, whose award was entered as the judgment of the court: *Held*, That the proceeding was a nullity.

*Quere* whether a contested election can be submitted to arbitrators, and whether rights generally cognizable in the County Court can be arbitrated as at common law, and the award be made the judgment of that court.

Appeal from Collin. Custer received a certificate of election as sheriff of Collin county for two years from the 7th day of August, A. D. 1848. Fitzhugh, who had been a candidate at the same time, contested the election. The record of the County Court shows that on the first day, the court consisting of the Chief Justice and two commissioners, it was ruled that the Chief Justice and one of the commissioners were disqualified to sit in the case; that on the next day, no quorum appearing, the counsel of the parties agreed to submit, and did submit, the controversy for decision to arbitrators; [**392**] that it was declared by the arbitrators that, there being a tie between the contestants for the office, the election was set aside and a new one ordered. This award was entered as the judgment of the court. Afterwards an election was ordered. At this election Fitzhugh, having received a majority of the votes, was declared duly elected, and received the certificate of election. Thereupon Custer applied for this *mandamus* to compel Fitzhugh to deliver to him the office, claiming it by virtue of his certificate of the result of the first election. The court below ordered the writ of *mandamus* to be issued. Fitzhugh appealed. The errors assigned were—

1st. The refusal to grant the motion of the defendant to dismiss the case.

2d. The award of a peremptory *mandamus* over the return of defendant, and in disregard of the records, orders, and judgment of the County Court.

3d. That the court erred in disregarding the certificate of the appellant's election to the office of sheriff.

*Everts*, for appellant.

I. The court below ought to have dismissed the petition, because the court has no authority to issue a *mandamus* for any other purpose than to enforce its own jurisdiction. (Sec. 4, art. 10, Const.; Laws of 1846, p. 201, sec. 4.)

The writ of *quo warranto*, and not *mandamus*, is the method of trying the title of an officer to his office. (People *v.* Stephens, 5 Hill R., 627, Bronson's opinion; People *v.* Forquer, Breese R., 68.)

II. The judgment of the County Court is conclusive. It had jurisdiction of the subject-matter and of the parties, and however irregular the proceedings may be, and whatever means the court may have used to arrive at the judgment rendered, the judgment must stand unless reversed by a superior court for error or set aside for fraud. Here no appeal is allowed and no fraud is alleged. (Sutherland *v.* De Leon, 1 Tex. R., 399; State *v.* Bowen, 6 Ala. R.)

196

## Fitzhugh v. Custer.

*Cravens,* for appellee.

I. No motion to dismiss was made in writing; if made orally, the court would not be bound to notice it. (20 Rule S. C., 1840; Laws of 1846, p. 376, sec. 53.)

II. There was no quorum of the County Court when the proceedings relied on by the appellant were had. (Coleman *v.* Smith, 1 Mart. & Yerg. R., 36.)

The attorneys of the parties had no authority to agree to arbitrate the case, if it was competent to arbitrate it at all, which is not admitted. The return not being sufficient, the peremptory *mandamus* was properly ordered. (Wright R., 559.)

HEMPHILL, CH. J. The first assignment will be disposed of very briefly. No motion to dismiss nor action of the court upon such motion appears of record. In the opinion delivered by the judge there is a casual observation from which it may be inferred that such motion was made, but this furnishes no such evidence of the point or of the ruling of the court as will authorize the exercise of appellate supervision.

The second assignment may be considered as embracing, though not very distinctly, two propositions:

1st. That the return was sufficient in its statement, and the writ should have therefore been refused.

2d. That if the truth of the fact stated in the return could be impeached in the same suit in which it was filed, yet the judgment of the County Court being valid, its obligation could not be disregarded.

The first proposition suggests a question of great importance in our practice, which has been discussed but very briefly, if at all, by counsel, and which has not been decided in any of the cases for *mandamus* which have been before the court. There is no doubt that at common law, if the return showed sufficient legal reason against the award of the writ, the proceedings on the *mandamus* terminated. Its verity could not be questioned in that suit, and the only remedy [**394**] of the prosecutor was by bringing an action on the case for a false return or a criminal information, where the rights of the public, rather than those of any individual in particular, were concerned; and if judgment be given establishing the falsity of the return, a peremptory *mandamus* would then be awarded. (1 Salk., 374; 2 Id., 431, 432; 11 Coke, 99, *b;* Wil. M. C., 427, 428, 429, 443.) This continued in all cases of *mandamus* until by the statute of 9 Anne, c. 20, the return to writs issued for offices and franchises in corporations and boroughs were made traversable as to their material facts, and such further proceedings were directed to be had as if the applicant for the writ had brought his action for a false return. And by the statute of William IV, c. 21, the same rule was extended to all cases for *mandamus,* and the prosecutor was authorized to plead to or traverse the return, and his antagonist to take issue, reply, or demur, and the same proceedings to be had as on action for a false return.

The mischiefs designed to be obviated by permitting the facts of the return to be immediately controverted and their truth or falsity ascertained are very forcibly depicted in the preamble to the statute of Anne. Many of the offices into which divers persons had illegally intruded themselves were annual offices; and it had been found very difficult, if not impracticable, by the laws then in being to bring the rights of such persons to the offices to trial and determination within the compass of the year. And where they were not annual it was difficult to determine the right before such persons had done divers acts in their said offices prejudicial to the peace, order, and good government within the cities, towns, &c., wherein they had acted: "And whereas divers persons who had a right to such offices, or to burgesses, franchises, &c., of such cities, have either been illegally turned out of the same or refused to be admitted thereto, having in many cases no other remedy to procure themselves to be admitted or restored thereto than by writs of *mandamus,* the proceedings on

which are very dilatory and expensive, whereby [**395**] great mischiefs have already ensued, and more are likely to ensue if not timely prevented."

The remedy provided was to require the defendants to make a return of the first writ of *mandamus*, and to authorize the prosecutor, as already stated, to controvert the return and have the matters at issue at once ascertained and determined.

The statute of Anne has not been made of force in this State, nor has any one containing provisions of a similar character, specifically applicable to writs of *mandamus*, been adopted; and the question arises whether, under our system of procedure and pleadings, we may not well hold that the truth of all matters which are alleged in the pleadings in any action may and should be ascertained and determined in the same suit, without the necessity of resorting to a second action for the express and sole purpose of determining whether the matters stated are true or false. That this proposition should be answered in the affirmative, it seems only necessary that it should be stated. If the facts can be controverted at all, they can be determined as well in one as in two or any number of actions.

A controlling principle which pervades our entire system of civil jurisprudence is that which forbids a multiplicity of suits and requires the rights of the parties incident to the subject-matter of the suit, whether they be of a legal or equitable character, to be determined in a single controversy. This is conceived to be a great improvement over the system which permitted two suits in relation to the same subject-matter—one for the trial of the legal, and the other for the equitable rights of the parties—and which authorized a judgment obtained in one form to be perhaps immediately enjoined by the same court under powers vested in a different jurisdiction. This rule of procedure requiring the rights of the parties to be tried in one action has been enforced from the first organization of our courts, and under the former as well as the existing system of jurisprudence; and by the 7th section of the act organizing [**396**] the District Court &c., (Laws of 1846, p. 202,) the court is directed to grant all such orders, writs, or other process necessary to obtain the relief prayed for, and to so frame the judgments of the court as to afford all the relief which may be required by the nature of the case and which is granted by courts of law or equity. A marked characteristic of our system is the repudiation of two suits where the matters at issue can be properly tried and determined in one; and the party entitled must have the judgment, whether his rights be founded on the principles of law or equity.

If rights of law and equitable cognizance can be blended and tried in the same suit, and this for the beneficial purpose of putting an end to litigation and for the speedy and cheap administration of justice, it would seem that no rule of law or practice could be tolerated under our system which would prohibit an inquiry into the facts pleaded in a suit and yet permit a second action for that express purpose. If any advantage could be derived by the trial of the dispute as to the facts in a separate action, we might hesitate in the rejection of the rule, however inappropriate and apparently repugnant to our system of procedure. But there is none. Its only results are delay and expense to the parties and their concomitant mischiefs.

It would be a fruitless task to attempt to explore the reasons upon which the rule was originally founded. Its absurdity and insufficiency for any good purpose are established by its partial abolition nearly a century and a half since in England, and its subsequent complete abrogation in all cases of *mandamus*.

The introduction of the writ of *mandamus* by name does not necessarily bring with it all the rules of practice regulating the issue of the writ. The rules of pleading in cases of *mandamus* are judicious, and should be enforced when not incompatible with statutory regulations. The certainty of pleading required both in the application and the return was to some extent indicated in the case of Cullem [**397**] *v.* Latimer, decided at the present term. That

## Fitzhugh v. Custer.

the rules which govern the writs of *mandamus* at common law are modified as well by our statutes as by the structure and organization of our courts, and, we may add, in this case by the principles which lie at the foundation of our system of procedure, was decided by the Supreme Court of the Republic in the case of Bradley *v.* McCrabb, (Dallam, 508.) In the opinion it is stated that in deciding on the proper practice to be pursued under our laws and the organization of our courts, we derive but little assistance from an examination of the practice of the common-law courts of England, and the decisions thereon are no further binding than as they are applicable to the structure of our courts of justice. There the terms of the courts are frequent and long continued, and the difference between the time of the teste and the return of the writ varies according to the distance of the respondent from the place where the sessions of the courts are holden. Here the courts are held but twice in the year. The term of many of them does not exceed six days, which is two days less than the minimum period allowed in England between the teste and the return of writs of *mandamus*. The dissimilarity between the organization of the English and our courts is so great that no deduction can be drawn from the English practice as to the proper period of notice under our judicial establishment. The question then arises whether, on a just interpretation of our statute laws, considering the powers of the District Courts and the objects to be obtained by the remedy, a writ of *mandamus* can be returned to the term from which it issued. This question will admit of but one answer. If we examine the usages of other courts where the common law prevails, we will find that the rule to show cause, the alternative, and the peremptory *mandamus* have all been granted at the same term of the court, &c.

This decision was made under the statute of the 25th January, 1841, which directed judges, in issuing writs of *mandamus*, to observe the rules which govern the writs of *mandamus* [398] at common law, as modified by the statutes of the Republic; and its principal object was to prevent writs issuing without notice to the respondent.

It was urged in that case that the defendant was entitled to the five days' notice before the commencement of the term, under the statute which directed all original process to be executed five days before the return day thereof, (Laws of 1836, 201,) but it was held in effect that the writ might be issued during the term, and that the defendant was entitled neither to the five days' previous notice, nor was he entitled to the period allowed in England, as our courts might often close before the expiration of the term of notice. This decision has, it is believed, been generally approved; and in subsequent laws it has been specially provided that writs of *mandamus* may be returned at the term at which they were issued.

If, from the character of the writ, the nature of the remedy, and the structure of our courts, we were authorized to disregard the positive rules fixed by either law in relation to notice, it seems that, in accordance with the principles regulating our system of procedure, we may disregard the ancient rule of common law requiring the facts pleaded in the answer to be controverted, not in the same, but in a new and separate action.

We proceed to examine the second proposition embraced in the assignment, viz, as to the power of the court to disregard the judgment of the County Court vacating the election of the 7th August, and treating its order as a nullity. It may be contended that, the court having jurisdiction over the subject-matter and the parties, their judgment is conclusive, however irregular may have been the mode of arriving at their decision. The correctness of these positions may be admitted, but they leave untouched the controlling question in the case, viz, whether the judgment was rendered by a court of competent jurisdiction, or rather, whether the order vacating the election of the 7th August [399] emanated from a court or from an unauthorized individual. The doctrine contended for, that a judgment must stand unless reversed for error or

set aside for fraud, does not apply where the want of jurisdiction is made a question. This may always be set up when a judgment is sought to be enforced or any benefit is claimed under it; and this is not inconsistent with the principle which ordinarily forbids the impeachment or contradiction of a record. (Cow. & H.'s Notes to Phillips's Ev., 800, note 551.)

In this case there is no impeachment of the verity of the record. The want of jurisdiction is shown upon its face. The entry commences by stating that there was no quorum, and in a continuous narrative shows the submission to arbitration, the award of the arbitrators, and that this was made the judgment of the court. If a contested right to an office be the proper subject of arbitrament, and if, under the rules and principles of the common law, independent of the statute, rights cognizable by the County Court may be arbitrated, and the award, by appropriate proceedings, be made the judgment of the court, yet this award has not the force of a judgment, for the reason that it was not rendered as such by a court. The members present, if any, could exercise no judicial functions requiring a quorum. . The entry by the clerk of the judgment was unauthorized, and the whole proceeding is as absolutely null as if conducted before and determined by any private individual or individuals without the pretense of judicial authority. There being no error in the judgment of the court, it is ordered that the same be affirmed.

Judgment affirmed.

